# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SEAN SESSIONS, a single individual, | No. 78825-6-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| CLARESE B. HENDERSON; ELIZABETH A. MITCHELL and SCOTT H. MITCHELL, husband and wife; ERIC ZAHL; and all other persons, or parties unknown claiming any right, title, estate, lien or interest in the real estate described in the complaint herein, | |
| Appellants. | FILED: November 18, 2019 |

APPELWICK, J. — This is an adverse possession case involving a narrow strip of land between two residential lots in Seattle. The dispute arose after Eric Zahl removed a chain link fence and vegetation from the area in question over the vehement objection of Sean Sessions, the adjacent owner. Sessions sued Eric Zahl and Clarese Zahl[1] to quiet title to the disputed area based on adverse possession and for damages based on trespass. The trial court denied the Zahls' motion for summary judgment and Sessions's motion for partial summary judgment. Following a bench trial, the court quieted title to Sessions. The court also awarded treble damages for the loss of trees and shrubs under the timber trespass statute, and attorney fees and costs under the adverse possession

---

[1] Clarese Henderson now goes by the name Clarese Zahl.

statute. We affirm the court's rulings quieting title to the disputed land and awarding treble damages to Sessions. We remand to the trial court for entry of findings of fact and conclusions of law with respect to the reasonable amount of such fees.

## FACTS

This property dispute involves a narrow strip of land running from north to south between adjacent lots in Seattle. The Zahls reside at the property located at 3951 South Orcas Street, and Sessions resides at the property located at 3955 South Orcas Street in Seattle. The properties share a 103 foot common boundary on the east side of the Zahl property and the west side of the Sessions property. At the time the Zahls purchased their property, there was a six foot chain link fence around their entire property, with a gate. The portion of the chain link fence between the Zahl and Session properties had been present in the same location since at least 1996. Large trees and shrubs grew in the disputed area along Sessions' side of the fence.

Clarese Zahl and her parents purchased the 3951 South Orcas Street property from the John Williams Estate in July 2009.[2] Sessions purchased the 3955 Orcas Street property from Coulter Smith in December 2013. Smith purchased the property in September 2005 from Thong Tra and his wife, and resided there until selling it to Sessions. Tra's parents purchased the property in 1996 and resided there until 2003, at which time they deeded the property to their son Thong.

The chain link fence between the properties was present when the Tra family purchased the property in 1996. At that time, Thong Tra was away at college. When Tra

---

[2] The Zahls moved into the home in 2009. They married the following year. Clarese Zahl's parents do not reside at the home and did not testify at trial.

first saw the house in the summer of 1996, there were little shrubs planted along the fence which grew bigger over time. Tra lived there with his parents during the summer of 1996 and 1997, and full time from 1998 through 2000, when he got married and moved out. When Tra was not living at the property, he visited his parents regularly. Tra leased the property from 2003 through 2005. Tra's tenants were responsible for mowing the lawn and caring for the shrubs as per the terms of the lease. No evidence was presented by Zahl that anyone other than the Tra family or Tra's tenants maintained the property between 1996 and 2005.

The Zahls and Smith got along well. Eric Zahl did not know exactly where the boundary line was. But, there were visual clues that led him to suspect the fence probably was not the property line, including the location of the power line and the garage. Zahl told Smith he thought the property line was somewhere in the hedge. According to Smith, Zahl routinely assisted him in maintaining the vegetation around both sides of the fence. Smith did not know the exact location of the property line. Smith stated that he never regarded the fence as the property line and did not treat it as his own property. Smith never discussed the property line with the previous owner of the Zahls' property.

In contrast, Sessions believed the chain link fence was the boundary between his property and that of the Zahls. When Smith sold the property to Sessions in 2013, he completed a seller disclosure statement in which he stated there were no encroachments, boundary agreements, or boundary disputes. Sessions stated that he did extensive landscaping in the disputed area without a word from Eric Zahl about trespassing or permission. In December 2015, Sessions and Zahl agreed to remove a portion of chain link fence and ivy on the east side of the Zalhs' garage to abate a rat colony. Zahl

3

provided tools and materials, and Sessions did the work. There was no discussion regarding boundary disputes at that time.

In February 2016, the Zahls had their property surveyed. The surveyed boundary line between the Zahl and Sessions properties was several feet east of the chain link fence. According to Clarese Zahl, Sessions did not express concern at that time about the location of the surveyed boundary line with respect to the vegetation.

On March 9, 2017, Zahl sent a text message to Sessions stating that he intended to install a wood fence with a gate between the two properties. Sessions responded by asking if he intended to place the new fence along the existing line of the chain link fence or along the survey line. Sessions said he would help with the fence if it were along the existing line, but that he would object and file a lawsuit if Zahl intended to place it along the survey line. Sessions also told Zahl he did not want a gate between the properties. The following day, over Smith's strenuous objection, Zahl removed the chain link fence and removed or damaged the trees and shrubs growing the disputed area.

On June 5, 2017, Sessions filed an amended complaint to quiet title in King County Superior Court. The complaint alleged that Sessions acquired title to the narrow strip that lay east of the chain link fence by adverse possession. The complaint further alleged that Zahl's wrongful actions, including removing the fence, trees, and shrubs, constituted common law trespass, statutory trespass pursuant to RCW 4.24.630(1), and statutory timber trespass pursuant to RCW 64.12.030, entitling him to treble damages for the intentionally destroyed trees and shrubs.

On September 25, 2017, the Zahls moved for summary judgment dismissal of Sessions' adverse possession claim and for dismissal of his trespass claim pursuant to

CR 12(b)(6) or CR 56. Zahl argued that Sessions was unable to establish a prima facie case of adverse possession and Zahl could not be held liable for removing a fence and vegetation from their own property.

On October 13, 2017, Sessions moved for partial summary judgment quieting title in his favor. Sessions argued that title to the disputed strip had passed by adverse possession prior to the purchase by Smith. He further asserted that the Zahls' motion for summary judgment should be denied due to disputed issues of material fact regarding adverse possession.

On November 20 2017, the trial court denied the Zahls' motion for summary judgment, and the case proceeded to a bench trial. On May 30, 2018, the court quieted title in Sessions based on adverse possession. Although the record contains no written findings of fact or conclusions of law, the court articulated the basis of its decision in a lengthy oral ruling. The court ruled that (1) the elements of adverse possession were met before the Zahls purchased the property in 2009 and (2) Zahl's removal of trees in the disputed strip was trespass. The court reserved ruling on the amount of damages and attorney fees. On July 20, 2018, the court ruled that the Zahls were liable to Sessions for treble damages under the timber trespass statute. In so ruling, the court specified that the damage was intentional. The court also awarded attorney fees to Sessions in the full amount requested.

On July 24, 2018, the court issued an amended judgment and order quieting title in Sessions and ordering the Zahls to pay Sessions $18,995.25 in compensation for the damaged landscaping and $19,647.92 in attorney fees and costs. The court denied the Zahls' motion for reconsideration. The Zahls appeal.

## ANALYSIS

I. Adverse Possession

A. Standard of Review

"'[A]dverse possession is a mixed question of law and fact.'" Chaplin v. Sanders, 100 Wn.2d 853, 863, 676 P.2d 431 (1984) (alteration in original) (quoting Peeples v. Port of Bellingham, 93 Wn.2d 766, 771, 613 P.2d 1128 (1980)). Whether adverse possession has been established by the facts as found by the trial court is a question of law reviewed de novo. Happy Bunch, LLC v. Grandview North, LLC, 142 Wn. App. 81, 88, 173 P.3d 959 (2007). "Factual findings will be disturbed on appeal only when they are not sustained by the record." Anderson v. Hudak, 80 Wn. App. 398, 402, 907 P.2d 305 (1995).

The Zahls argue that Sessions failed to bear his initial burden on summary judgment to provide evidence establishing each element of his underlying claims or raising a disputed issue of material fact. In particular, they assert that the mere presence of a fence is not enough to create an issue of fact. However, "[a]fter a trial on the merits, we will not review a trial court's denial of a motion for summary judgment if the denial was based on the presence of material disputed facts." Lopez v. Reynoso, 129 Wn. App. 165, 174, 118 P.3d 398 (2005) (citing Herring v. Dep't of Soc. & Health Servs., 81 Wn. App. 1, 14, 914 P.2d 67 (1996)); Johnson v. Rothstein, 52 Wn. App. 303, 304, 759 P.2d 471 (1988).

To establish a claim of adverse possession, the claimant must prove that the claimant's possession is (1) exclusive, (2) actual and uninterrupted, (3) open and notorious, and (4) hostile. ITT Rayonier, Inc. v. Bell, 112 Wn.2d 754, 757, 774 P.2d 6 (1989). These elements must exist concurrently for 10 years. RCW 4.16.020; Chaplin v.

Sanders, 100 Wn.2d 853, 857, 676 P.2d 431 (1984). A party may "tack" the adverse possession of a predecessor in interest to establish the 10 year statutory period for adverse possession. Roy v. Cunningham, 46 Wn. App. 409, 413-14, 731 P.2d 526 (1986); RCW 4.16.020(1).

B. Exclusive and Hostile Possession

The Zahls argue that Sessions did not establish the exclusivity and hostility elements of adverse possession. They contend that the mere existence of the chain link fence was not enough to establish adverse possession, particularly where Sessions failed to present evidence that the fence excluded the Zahls.

Hostility does not connote personal animosity or adversarial intent. It requires only "that the claimant treat the land as his own as against the world throughout the statutory period." Chaplin, 100 Wn.2d at 860-61. "Fences are typical expressions of hostility, evidencing that an adverse possession claimant is treating the land inside the fence 'as [his] own as against the world.'" Ofuasia v. Smurr, 198 Wn. App. 133, 144, 392 P.3d 1148 (2017) (alteration in original) (quoting Roy v. Cunningham, 46 Wn. App. 409, 413, 731 P.2d 526 (1986)). "Where a fence purports to be a line fence, rather than a random one, and when it is effective in excluding an abutting owner from the unused part of a tract otherwise generally in use, it constitutes prima facie evidence of hostile possession up to the fence." Wood v. Nelson, 57 Wn.2d 539, 541, 358 P.2d 312 (1961)). Because "'[a] fence is the usual means relied upon to exclude strangers' and exclusion is another indication of possession," the existence of such a fence may be dispositive evidence of hostile possession. Acord v. Pettit, 174 Wn. App. 95, 107-09, 302 P.3d 1265 (2013) (quoting Wood, 57 Wn.2d at 540).

7

The six-foot high chain link fence was installed around the entire Zahl property. There is no evidence that anyone in Sessions line of title was responsible for construction of the fence. This suggests Zahl's predecessors in title were the source of the fence. No presumption that the fence was there to exclude Zahl should arise on these facts. Although there was some speculation as to exactly where the property line was, everyone agreed that it was in the vicinity of the fence. The court found, and the parties did not dispute, that the fence existed when the Tras took possession in 1996 and that it remained in place until Zahl removed it in 2017. Substantial evidence supports the trial court finding that the chain link fence was a boundary fence, though not erected on the surveyed property line.

Substantial evidence also supports the court's finding that "[t]he maintenance of the vegetation alone and the fence remaining where it did in the boundary area clearly indicates that the occupants of the plaintiff's property treated that entire property up to the fence as their own throughout the period." When Tra's parents bought the house in 1996, there were small shrubs along the fence that grew over time. And, from 2003 through 2005, Tra's tenants were responsible for maintaining the landscaping in the disputed area. This evidence establishes hostile possession up to the fence from 1999 through 2005, when Smith purchased the property. And, Smith testified that he never discussed the boundary line with the previous owners of the Zahl property. On this basis, Smith's time tacked on to the Tras. There was no evidence that the Tras or Smith treated the disputed area as if it belonged to the owners of the Zahl property during this time.

"Permission, express or implied, from the true owner negates the hostility element because permissive use is inconsistent with making use of property as would a true

8

owner." Teel v. Stading, 155 Wn. App. 390, 394, 228 P.3d 1293 (2010). But, Zahl presented no evidence that Tra or Smith used the property with the permission of the true owners.

Substantial evidence supports the conclusion that Sessions met the elements of hostility and exclusivity for the 10 year statutory period.

C. Open and Notorious Possession

The Zahls contend that Sessions presented no evidence of open and notorious possession by himself or his predecessors. "A claimant can satisfy the open and notorious element by showing either (1) that the title owner had actual notice of the adverse use throughout the statutory period or (2) that the claimant used the land such that any reasonable person would have thought he owned it." Riley v. Andres, 107 Wn. App. 391, 396-97, 27 P.3d 618 (2001). "Adverse use is measured objectively based on the observable acts of the user and the rightful owner." Lingvall v. Bartmess, 97 Wn. App. 245, 250, 982 P.2d 690 (1999). "The use and occupancy needs only to be like that of a true owner, considering the land's nature and location." Acord, 174 Wn. App. at 104.

The Zahls assert that Sessions did not use the disputed strip of land consistently and solely as if he was the owner. Rather, he allowed the Zahls to access and maintain the foliage. They further assert that Smith did not regard the fence as a boundary fence and that he encouraged Zahl to maintain the area. On this basis they contend that Sessions cannot rely on Smith's ownership from 2005 through 2013 to meet the "open and notorious" element through tacking. However, these arguments ignore that the statutory period had already run by the time the Zahls purchased their property in 2009.

9

Substantial evidence supports the trial court's conclusion that Sessions met the elements of open and notorious possession.

Accordingly, substantial evidence supports the conclusion that adverse possession caused the boundary to shift to the fence in 2006, several years before the Zahls moved in.

## II.  Timber Trespass

The Zahls argue that the trial court erred in awarding treble damages to Sessions under the timber trespass statute for the loss of his trees and shrubs.[3]

The statute prohibiting timber trespass provides in relevant part,

> Whenever any person shall cut down, . . . or otherwise injure, . . . any tree . . . on the land of another person . . . without lawful authority, in an action by the person . . . against the person committing the trespasses . . . any judgment for the plaintiff shall be for treble the amount of damages claimed or assessed.

RCW 64.12.030.

"The purpose of the timber trespass statute is well established: 'to (1) punish a voluntary offender, (2) provide treble damages, and (3) discourage persons from carelessly or intentionally removing another's merchantable shrubs or trees on the gamble that the enterprise will be profitable if actual damages only are incurred.'" Pendergrast v. Matichuck, 186 Wn.2d 556, 567, 379 P.3d 96 (2016) (internal quotation marks omitted) (quoting Broughton Lumber Co. v. BNSF Ry. Co., 174 Wn.2d 619, 625, 278 P.3d 173 (2012)). Because the timber trespass statute is penal in nature, it should be strictly construed. Broughton, 174 Wn.2d at 633.

---

[3] Zahl does not rely on RCW 4.24.630 to support the damage award or the attorney fee award.

Citing the above-quoted language in Pendergrast, the Zahls first argue that the timber trespass statute does not apply because the trees and shrubs were not "merchantable." Pendergrast, 186 Wn.2d at 567. The Zahls are mistaken. RCW 64.12.030 contains no language limiting its application to "merchantable" trees. We will not add words to a statute where the legislature has not included them. Olympic Tug & Barge, Inc. v. Dept. of Revenue, 163 Wn. App. 298, 306, 259 P.3d 338 (2011). Moreover, courts routinely grant treble damages under RCW 64.12.030 in cases involving injury or destruction of residential or ornamental trees and shrubs whose primary function and value is essentially noncommercial in nature. See Birchler, 133 Wn.2d at 112; Sherrell v. Selfors, 73 Wn. App. 596, 602-03, 871 P.2d 168 (1994); Tatum v. R & R Cable, Inc., 30 Wn. App. 580, 583-84, 636 P.2d 508 (1981), overruled on other grounds by Beckmann v. Spokane Transit Auth., 107 Wn.2d 785, 733 P.2d 960 (1987). The measure of damages in such cases is the restoration or replacement cost for the vegetation. Birchler, 133 Wn.2d at 111-112.

The Zahls further argue that the facts of this case do not justify treble damages because (1) the legal survey and legal descriptions of both plots suggests reasonable cause to believe it was their property and (2) Sessions made no clear, unambiguous assertion of ownership until Zahl began taking down the fence. On this basis, they contend Zahl's actions were not truly "willful."

"'The rule is well established in Washington that there must be an element of willfulness on the part of the trespasser to support treble damages'" under RCW 64.12.030. Herring v. Pelayo, 198 Wn. App. 828, 834, 397 P.3d 125 (2017) (internal quotation marks omitted) (quoting Blake v. Grant, 65 Wn.2d 410, 412, 397 P.2d 843

11

(1964)). In this context, "willful" means the trespass was not merely casual or involuntary or based on a mistaken belief of ownership of the land. Birchler, 133 Wn.2d at 110; Herring, 198 Wn. App. at 834. In granting Sessions' claim for treble damages, the trial court stated,

> I don't have any question here about intentionality, that is obvious on the facts of this case and I've already ruled on it. There is no way with the neighbor, the plaintiff, refusing to allow the defendant to do what he did and not agreeing to the boundary, that the defendant tearing down the fence and destroying the vegetation can be used as anything other than intentional. When there is a bonafide dispute and a person nonetheless goes on to the neighbor's land to take out vegetation, that's the end of the inquiry, frankly, as to intentionality. I have to say that I'm very, very disappointed that the defendants still don't seem to have gotten the message, either from the Court or from counsel, that you do not simply get a property survey and decide that gives you license to do what you like on your neighbor's land. This is not how civilized people operate in a civilized society, it's contrary everything in our law. And frankly, ignorance of the law is not an excuse.

The trial court's ruling finds ample support in the record. When Zahl informed Sessions that he intended to remove and replace the chain link fence, Sessions indicated that he would support a new fence in the same location, but that he would legally oppose any attempt to move it. And, when Zahl proceeded to remove the fence and vegetation anyway, Sessions objected vociferously and called the police. The Zahls produced no evidence from which the court could infer that these actions were casual or involuntary. The court did not err in imposing treble damages under RCW 64.12.030.

III.  Attorney Fees

The Zahls challenge the amount of the trial court's award of attorney fees to Sessions pursuant to RCW 7.28.083(3). We review the reasonableness of an attorney fee award for abuse of discretion. Ethridge v. Hwang, 105 Wn. App. 447, 460, 20 P.3d

958 (2001). A trial judge is given broad discretion in determining the reasonableness of an award, and in order to reverse that award, it must be shown that the trial court manifestly abused its discretion. Id.

The general rule in Washington is that each party in a civil action will pay its own attorney fees and costs unless authorized by contract, statute, or recognized ground in equity. Cosmo. Eng'g Grp., Inc. v. Ondeo Degremont, Inc., 159 Wn.2d 292, 296-97, 149 P.3d 666 (2006). RCW 7.28.083(3) provides that "[t]he prevailing party in an action asserting title to real property by adverse possession may request the court to award costs and reasonable attorneys' fees. The court may award all or a portion of costs and reasonable attorneys' fees to the prevailing party if, after considering all the facts, the court determines such an award is equitable and just."

The Zahls argue that Sessions is entitled to fees only for time spent on the adverse possession claim, not time spent on the damages claims. They contend that the trial court abused its discretion by not segregating fees. However, a trial court is not required to segregate fees where it determines that the various claims are intertwined and no reasonable segregation of claims can be made. Boguch v. Landover Corp., 153 Wn. App. 595, 620, 224 P.3d 795 (2009). Nor is the court required to artificially segregate time in a case where all of the plaintiff's claims relate to the same fact pattern but allege different bases for recovery. Ethridge, 105 Wn. App. at 461.

In Ethridge, the plaintiff prevailed on all three theories alleged in the complaint. Id. at 460. Although only two of the three claims authorized attorney fees, the trial court awarded all her attorney fees. Id. at 461. On appeal, the defendant argued that the trial

13

court erred in failing to segregate the fee award. Id. at 460-61. The court affirmed the award,

> Here, Ethridge prevailed on all three theories alleged in the complaint: [Mobile Home Landlord-Tenant Act, RCW 59.20.010-.901], [Consumer Protection Act, ch. 19.86 RCW], and tortious interference. Each claim involved the same core of facts—Hwang's unreasonable rejection of prospective buyers at the park. Proof of the tortious interference claim involved the same preparation as the other claims—establishing that Hwang acted unreasonably. Because nearly every fact in this case related in some way to all three claims, segregation of the fee request was not necessary and the trial court did not abuse its discretion in awarding fees as it did.

Id. at 461.

Here, the costs of the litigation all stemmed from Sessions's claim of adverse possession. Without adverse possession, there would be no statutory or common law trespass. As in Ethridge, all of the claims arose from the same common core of facts. Under these circumstances, we cannot say the trial court abused its discretion in not segregating the fees.

The Zahls also assert that the trial court failed to provide any analysis or make any findings of fact as to how it arrived at its calculation of reasonable attorney fees under RCW 7.28.083. To determine a reasonable attorney fee, the court "begins with a calculation of the 'lodestar,' which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Berryman v. Metcalf, 177 Wn. App. 644, 660, 312 P.3d 745 (2013). The requesting attorney must provide reasonable documentation of their work performed, and the court should discount hours spent on unsuccessful claims, duplicated effort, or unproductive time. Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597, 675 P.2d 193 (1983). After the lodestar is calculated,

the court may adjust it up or down to reflect additional factors. <u>Chuong Van Pham v. Seattle City Light</u>, 159 Wn.2d 527, 541, 151 P.3d 976 (2007).

The trial court must create an adequate record for review of its fee award. <u>Mahler v. Szucs</u>, 135 Wn.2d 398, 435, 957 P.2d 632 (1998). Failure to create an adequate record will result in a remand of the award to the trial court to develop such a record. <u>Id.</u>

Here, Sessions requested $19,647.92 in attorney fees and costs. In granting the full amount requested, the trial court stated,

> The last thing I want to say is that I hold the defendant responsible for the fact that this case needed to come to trial. And I see no reason at all why the plaintiff should bear the cost of that. He really had no option but to bring this suit and take it to trial because he could not get anywhere with the defendants otherwise. So I think he's entitled his attorney's fees, and as a matter of discretion I'm awarding those in the amount requested. Those are well-documented.

The declaration provided by Sessions' counsel provides an adequate basis for a lodestar determination of her fees. However, the record does not appear to contain any specific findings supporting the time incurred or the hourly rate charged. We therefore remand for entry of findings and conclusions of law to support the attorney fee award.

Lastly, the parties agree that the record lacks documentation to support an award of $2,312.00 in attorney fees for work performed by Sessions's original attorney, Robert Dickson. On remand, the fee award should be reduced accordingly.

We affirm, but remand for findings on the attorney fee award.

Appelwick, C.J.

WE CONCUR:

Leach, J.

15